**IN THE**
**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Northern District)**

| | |
|---|---|
| **PROFILES, INC.,** <br> 3000 Chestnut Avenue <br> Suite 201 <br> Baltimore, Maryland 21211, **on behalf of** <br> **itself and all others similarly situated**, <br><br>        **PLAINTIFF,** <br><br> **v.** <br><br> **BANK OF AMERICA CORPORATION,** <br> 100 North Tryon Street <br> Charlotte, North Carolina 28255 <br><br>   **Serve on:** <br>   The Corporation Trust, Inc. <br>   160 Mine Lake Ct., Suite 200 <br>   Raleigh, NC 27615-6417 <br><br> **BANK OF AMERICA, N.A.,** <br> 100 North Tryon Street <br> Charlotte, North Carolina 28255 <br><br>   **Serve on:** <br>   The Corporation Trust, Inc. <br>   2405 York Road, Suite 201 <br>   Lutherville Timonium, Maryland 21093-2264 <br><br>       **DEFENDANTS.** | **CIVIL ACTION NO. _____** <br><br> **CLASS ACTION COMPLAINT** |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## CLASS ACTION COMPLAINT

## I.   INTRODUCTION

1.     At a time of severe national need, Defendants Bank of America Corporation ("Bank of America") and Bank of America, N.A. ("BNA") (collectively, "Defendants" or "BOA") instead privileged discriminatory policies of corporate greed over the needs of America's small businesses.

2.      Authorized by Congress and the President under the Coronavirus Aid, Relief, and Economic Security Act, H.R. 748 ("CARES Act") and its loan programs to administer billions of dollars in federal funding to small businesses in a fair, equitable and uniform manner, Defendants implemented a loan process that unlawfully prioritized their existing borrowing clients and barred their depository clients and other small businesses from even applying for funds from the governmental loan programs.  Nothing in the CARES Act authorizes or permits Defendants to pick and choose who would gain access to or benefit from the federally backed lending program.  And, the priority of access to these limited funds is material – the demand is overwhelming as America responds to the economic tsunami of COVID-19 upon small businesses.  There is no justification for requiring depository clients and other small businesses to go to the end of the line.

3.      Named Plaintiff Profiles, Inc. ("Named Plaintiff" or "Profiles") brings this action, on behalf of itself and all others similarly situated, against BOA for violations of the CARES Act", violations of the Small Business Administration's ("SBA") 7(A) loan program, 15 U.S.C. § 636(a), a declaratory judgment pursuant to 28 U.S.C. § 2201, and a preliminary and permanent injunction pursuant to 28 U.S.C. § 2202.

4.      The Paycheck Protection Program ("PPP"), which is part of the $2 trillion stimulus package created by the CARES Act in response to the COVID-19 pandemic that was signed in to law on March 27, 2020, empowers lenders to make available as much as $349 billion in government-guaranteed loans to cover eight weeks of payroll and other expenses.

5.      BOA – creating an improper and unlawful restriction on PPP loans – is refusing to accept PPP loan applications unless the small business is an active borrower with BOA.  BOA is thus unlawfully prioritizing existing customers who are active borrowers as of February 2020.

6.      Indeed, BOA has denied access to the PPP program to small businesses that do not

2

have a "lending" relationship with BOA.  Profiles, which has a depository relationship with BOA, was prohibited by BOA from even applying for a PPP loan with BOA, despite meeting the statutory requirements for a PPP loan.

7.     The purpose and motivation behind BOA's discriminatory practice is transparent – it is prioritizing its balance sheet by supporting preexisting loans issued by BOA through the PPP program at the expense of small business customers who do not have a lending relationship with BOA.

8.     Senators Marco Rubio (R.-Fla.) and Ben Cardin (D.-Md.) have already chastised BOA for imposing criteria not found in the law and selectively choosing who can apply.

9.     BOA's discriminatory practices are abhorrent and in violation of federal law.  In this time of national need, BOA's discriminatory practices can only be described as corporate greed.

## II.     PARTIES

10.     Named Plaintiff Profiles is a public relations firm incorporated in Maryland with its principal place of business located at 3000 Chestnut Avenue, Suite 201, Baltimore, Maryland 21211.  Profiles is a small business that qualifies as an eligible applicant for a PPP loan under the CARES Act.

11.     Defendant Bank of America is a corporation organized under the laws of Delaware, with its principal place of business in Charlotte, North Carolina. It is a diversified global financial services company and a bank holding company. It has transacted business in this district.

12.     Defendant BNA is a national banking association headquartered in Charlotte, North Carolina. It has transacted business in this district.

13.     Defendant Bank of America, as the corporate parent of BNA, which was involved

in the wrongful activities alleged herein, had the practical ability to direct and control the actions

and operations of BNA and, in fact, did so through a variety of centralized policy and functions,

and coordinated practices.

## III.   JURISDICTION AND VENUE

14.     The subject matter jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§

1331 and 1332(d).  There are members of the Class who are citizens of states other than the states

of citizenship of Defendants, and the amount in controversy exceeds five million ($5,000,000)

dollars exclusive of interest and costs.

15.     Venue lies in this District pursuant to 28 U.S.C. §§ 1391 (a) and (c), as BOA

conducts a continuous course of business in the State of Maryland.

## IV.   FACTS

16.      The CARES Act is the largest economic relief bill in U.S. history and will allocate

$2.2 trillion in support to individuals and businesses affected by the coronavirus pandemic and

economic downturn.

17.     As part of the relief provided, the CARES Act expands the eligibility criteria for

borrowers to qualify for loans that are available through the SBA by adding the PPP to the SBA's

gamut of loan programs.

18.     The PPP provides federally-guaranteed loans up to a maximum amount of $10

million to eligible businesses, which can be conditionally forgivable, to encourage businesses to

retain employees through the COVID-19 crisis by assisting in the payment of certain operational

costs.  To accommodate for this SBA expansion, the CARES Act has authorized commitments to

the SBA 7(a) loan program, as modified by the CARES Act, in the amount of $349 billion.

19.     Eligible individuals and entities under the PPP include small businesses and eligible

4

nonprofit organization, Veterans organizations, and Tribal businesses described in the Small

Business Act, as well as individuals who are self-employed or are independent contractors who

meet program size standards.

20.     The SBA's interim final rule on the PPP provides the following information as to

who is eligible for a PPP loan:

> You are eligible for a PPP loan if you have 500 or fewer employees
> whose principal place of residence is in the United States, or are a
> business that operates in a certain industry and meet the applicable
> SBA employee-based size standards for that industry, and:
>
> i.  You are:
>
> A.      A small business concern as defined in section 3 of the Small
> Business Act (15 USC 632), and subject to SBA's affiliation rules
> under 13 CFR121.301(f) unless specifically waived in the Act;
>
> B.      A tax-exempt nonprofit organization described in section
> 501(c)(3) of the Internal Revenue Code (IRC), a tax-exemptveterans
> organization described in section 501(c)(19) of the IRC, Tribal
> business concern described in section 31(b)(2)(C) of the Small
> Business Act, or any other business; and
>
> ii.  You were in operation on February 15, 2020 and either had
> employees for whom you paid salaries and payroll taxes or paid
> independent contractors, as reported on a Form 1099-MISC.  You
> are also eligible for a PPP loan if you are an individual who operates
> under a sole proprietorship or as an independent contractor or
> eligible self-employed individual, you were in operation on
> February 15, 2020.  You must also submit such documentation as is
> necessary to establish eligibility such as payroll processor records,
> payroll tax filings, or Form 1099-MISC, or income and expenses
> from a sole proprietorship.  For borrowers that do not have any such
> documentation, the borrower must provide other supporting
> documentation, such as bank records, sufficient to demonstrate the
> qualifying payroll amount.

13 CFR Part 120, pp. 5-6.

21.     The "General Eligibility" section of the PPP loan lender application form lists only

two requirements for a PPP loan to be approved:

5

- The Applicant has certified to the Lender that (1) it was in operation on February 15, 2020 and had employees for whom the Applicant paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC, (2) current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant, (3) the funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, and (4) the Applicant has not received another Paycheck Protection Program loan.

- The Applicant has certified to the Lender that it (1) is an independent contractor, eligible self-employed individual, or sole proprietor or (2) employs no more than the greater of 500 or employees or, if applicable, meets the size standard in number of employees established by the SBA in 13 C.F.R. 121.201 for the Applicant's industry.

SBA Form 2484.

22.     At 8:42 am on Friday, April 3, 2020 – the opening day of PPP loans – Treasury Secretary Steven Mnuchin tweeted that community banks "have already processed over 700 loans" for a total of $2.5 million. Hugh Son & Dawn Giel, *Bank of America's Small Business Loan Portal is Up, But Most Banks are having Trouble*, CNBC (Apr. 3, 2020) [hereinafter "Hugh Son"], *available at* https://www.cnbc.com/2020/04/03/bank-of-americas-small-business-loan-portal-is-up-making-it-the-first-bank-to-accept-applications.html (last accessed Apr. 3, 2020).

23.     BOA announced on the morning of April 3, 2020, that it was accepting online applications for the Government's $349 billion PPP, becoming the first major bank to do so.  *See* Hugh Son.

24.     That same morning, BOA Chairman and CEO Brian Moynihan appeared on CNBC to tout BOA's participation in the program and BOA's claimed concern and interest for the welfare of small businesses in America.  In fact, on BOA's website, under the banner "We Are Here For Our Small Business Clients", BOA proclaims that "Our Small Business Clients who may be eligible for financial relief through the federal Paycheck Protection Program can now apply online."      https://about.bankofamerica.com/promo/assistance/latest-updates-from-bank-of-

america-coronavirus/small-business-assistance?cm_sp=SBC-_-PPP-Thread-Redirect-_-PPP-Thread-Redirect (last accessed Apr. 3, 2020).

25.     BOA's PPP loan portal went live at about 9 am ET Friday. *See* Hugh Son.  Within an hour, the bank had 10,000 applications for loans.  *Id.*

26.     Profiles is a "small business" as defined under the SBA guidelines, and qualifies as an eligible applicant for a PPP loan.

27.     Profiles is a private banking client of BOA, maintaining a depository relationship with BOA, including Profiles' primary checking account and other operational accounts.

28.     Profiles is not a current borrower of funds from BOA.

29.     In light of the COVID-19 pandemic and the current financial climate, Profiles attempted to apply for a PPP loan from BOA.

30.     However, when Profiles tried to apply for a PPP loan from BOA on the morning of April 3, 2020, Profiles was electronically denied access to an application.  The denial flagged the fact that Profiles did not have a preexisting lending relationship with BOA.

31.     Confused and distraught, Amy Elias ("Ms. Elias"), owner of Profiles, immediately contacted Marie Conley ("Ms. Conley"), Vice President, Bank of America, Preferred & Small Business Banking, Baltimore Metro Market, via email about BOA refusing to even allow her to apply for a PPP loan.

32.     Ms. Conley responded, "Amy, I'm so sorry!!!!! I just got the news today on my conference call.  I can imagine how devasted you must be.  I'm trying to find out where else you can go to get money.  Get back to you later."

33.     Ms. Elias responded, "Are you serious? They are not going to make an exception for all of this!?", to which Ms. Conley replied, "I asked a few minutes ago, thinking of you

specifically, and they said no."

34.    In disbelief, Ms. Elias wrote back, "I can not [*sic*] believe this."  Ms. Conley replied,

"I know. . . . I'm very disappointed too."

35.    Nothing in the PPP federal law allows for the differentiation of a small business

loan under the federal program between a bank's depository clients and their lending clients.  And,

nothing in PPP federal law allows for BOA to determine who can participate in the federal program

based on that improper criteria.

36.    The purpose and motivation behind BOA's discriminatory practice is transparent.

In light of the fact that PPP is a limited funding program, BOA has decided to prioritize its balance

sheet by supporting preexisting loans issued by BOA through the PPP program at the expense of

small businesses that do not have a lending relationship with BOA.  Had Congress intended to

allow banks, like BOA, to limit access to the PPP funding program to only those small businesses

that had a borrowing relationship with the bank, Congress would have said so.  The purpose,

however, of the PPP law is to assist all small business who qualify under the SBA rules and to

provide equal access to those funds.

37.    Nevertheless, BOA states on its website:

> Small Business clients with a business lending and a business
> deposit relationship at Bank of America are eligible to apply for a
> Paycheck Protection Program through our bank. A client's pre-
> existing lending relationship with us may include small business,
> commercial or corporate credit cards, conventional business loan or
> lease, business lines of credit, business auto loans, practice solutions
> loans, trade and asset-based loans.
>
> Small Business owners who do not have a business lending and
> business deposit relationship with us should contact their current
> business loan provider as soon as possible, if they plan to apply for
> the federal Paycheck Protection Program. This is the best and fastest
> method for applying for federal relief, based on the U.S. Treasury
> requirements and guidance.

*See*       https://about.bankofamerica.com/promo/assistance/latest-updates-from-bank-of-america-coronavirus/small-business-assistance?cm_sp=SBC-_-SBC-Link-_-SBC-Carousel (last accessed Apr. 3, 2020).

38.    Indeed, Senator Marco Rubio criticized BOA for its decision, saying via Tweeter, "The requirement that a #SmallBusiness not just have a business account but also a loan or credit card is NOT in the law we wrote & passed or in the regulations."  *See* Hugh Son:



39.    Likewise, Senator Ben Cardin issued the following Statement on Launch of Paycheck Protection Program:

> I am deeply troubled by reports of financial institutions turning away small businesses that desperately need capital through the Paycheck Protection Program. The small business provisions in the CARES Act were written to get funds into the hands of American small business owners as quickly as possible so they can keep employees on payroll and avoid financial ruin while we work to combat COVID-19. Creating artificial barriers that block businesses from

much-needed capital is redlining by another name. I will continue working with the administration to ensure that small businesses in every community have access to the programs created by the CARES Act, including the emergency EIDL grant program and the Paycheck Protection Program.

## V.   CLASS ACTION ALLEGATIONS

40.   Named Plaintiff incorporates each and every allegation contained in the preceding paragraphs by reference as if fully set forth herein.

41.   Named Plaintiff, in accordance with Fed. R. Civ. P. 23(b)(1), (b)(2) and (b)(3), bring this action on behalf of themselves and as members of the Class defined below.

42.   The Class consists of (a) all individuals or entities who qualify for a loan under the PPP and (b) who were prevented from even applying for a PPP loan by BOA solely because they do not have a pre-existing debt relationship with BOA.

43.   The Class is so numerous that joinder of all members is impracticable.  See Fed. R. Civ. P. 23(a)(1).  The Class consists of individuals and companies, throughout the country.

44.   There are questions of law and fact common to the Class.  See Fed. R. Civ. P. 23(a)(2).  These common questions include, but are not limited to:

A.   Whether Defendants wrongly imposed additional requirements for PPP loans for the purpose of protecting themselves for financial purposes; thereby, penalizing small businesses that the Government intended to benefit from PPP loans for not having a debt relationship with Defendants;

B.   Whether Defendants wrongly denied qualifying small businesses from applying to BOA for PPP loans;

C.   Whether the claims alleged herein can be stated against Defendants by this Class based on the facts alleged in this complaint;

45.     The claims of Named Plaintiff, which arise out of BOA's prohibition of qualifying small businesses to apply for PPP loans with BOA, are typical of the claims of the Class members. Likewise, Defendants' defenses to the Named Plaintiff's claims – both the myriad of legal defenses that can be anticipated, together with the factual defenses – are typical of the defenses to the Class claims. *See* Fed. R. Civ. P. 23(a)(3).

46.     The Named Plaintiff will fairly and adequately represent and protect the interests of the Class. *See* Fed. R. Civ. P. 23(a)(4). The Named Plaintiff is articulate and knowledgeable about its claims, and fully able to describe them. There are no conflicts of interest between the Named Plaintiff with respect to the interests of the Class members. The Named Plaintiff, like the Class members, have suffered financial loss as a result of Defendants' acts. Named Plaintiff has sufficient financial resources to litigate this case and further the interests of the Class without compromising them.

47.     Counsel for the Named Plaintiff are well-suited to represent their interests and the interests of the Class at large. Counsel include M. Celeste Bruce, Esq., Alan M. Rifkin, Esq., Charles S. Fax, Esq., Liesel J. Schopler, Esq. and Barry L. Gogel, Esq. (Rifkin Weiner Livingston LLC). The combined experience and areas of professional concentration of these attorneys are well-suited to representation of the interests of the Class. All these lawyers practice complex civil litigation and are experienced in class action litigation.

48.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(1). Prosecuting separate actions would create a risk of adjudications with respect to individual Class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

49.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(2).  BOA will continue to commit the violations alleged, and the members of the Classes and the general public will continue to be unfairly denied access to critical relief that they are entitled to under the CARES Act's PPP.  BOA has acted and refused to act on grounds that apply generally to the Class so that final injunctive relief and corresponding declaratory relief is appropriate respecting the Class as a whole.

50.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3).  The questions of law or fact common to the members of the Class, described above, predominate over any questions affecting only individual members.

51.     Due to the individual amount at issue as to each Class member, as well as the cost and difficulty in litigating each case separately, the Class members have insufficient interest in individually controlling the prosecution of separate actions.  *See* Fed. R. Civ. P. 23(b)(3)(A).

52.     The Class has not previously litigated the claims asserted in this complaint.  *See* Fed. R. Civ. P. 23(b)(3)(B).

53.     This Court is an appropriate forum for the litigation of the Class claims.

54.     Any difficulties that might be incurred in the management of this class action are insubstantial.  *See* Fed. R. Civ. P. 23(b)(3)(D).

**COUNT I**
**Violations of the CARES Act, H.R. 748**
**(Against All Defendants)**

55.     Named Plaintiff incorporates each and every allegation contained in the preceding paragraphs by reference as if fully set forth herein.

56.     The CARES Act, a $2 trillion stimulus package in response to the COVID-19 pandemic that was signed in to law on March 27, 2020, includes the PPP, which empowers lenders

to make available as much as $349 billion in government-guaranteed loans to cover eight weeks of payroll and other expenses.

57.    There is an implied cause of action arising under the CARES Act.

58.    The CARES Act, along with the SBA's interim final rule on the PPP, provides the sole eligibility requirements to apply for a PPP loan.

59.    The purpose of the CARES Act's PPP is to assist all entities and individuals who qualify and to provide equal access to those funds.

60.    In flagrant disregard for law, BOA has decided to protect itself through the PPP program – rather than intended entities and individuals – by creating an unnecessary requirement to apply for a PPP loan from it – a lending relationship with BOA.

61.    Profiles met the eligibility requirements for a PPP loan.  Nevertheless, BOA refused to allow Profiles to apply for a PPP loan because it did not have a lending relationship with BOA.

62.    As a direct and proximate result of BOA's wrongful actions, Profiles and Class members have suffered damages up to $10 million each due their inability to apply for a PPP loan with BOA despite being eligible therefor.

## COUNT II
### Violations of the SBA's 7(a) Loan Program, 15 U.S.C. 636(a)
### (Against All Defendants)

63.    Named Plaintiff incorporates each and every allegation contained in the preceding paragraphs by reference as if fully set forth herein.

64.    The SBA's 7(a) loan program is designed to help start-up and existing small businesses obtain financing when they might not otherwise be eligible for business loans.  Under the program, a participating lender executes the loan with the borrower according to specific SBA requirements.

65.     The PPP is part of the SBA's 7(a) loan program.

66.     There is an implied cause of action arising under the SBA's 7(a) loan program.

67.     In flagrant disregard for law, BOA has decided to protect itself through the SBA's 7(a) PPP program – rather than intended entities and individuals – by creating an unnecessary requirement to apply for a PPP loan from it – a lending relationship with BOA.

68.     Profiles met the eligibility requirements for a PPP loan.  Nevertheless, BOA refused to allow Profiles to apply for a PPP loan because it did not have a lending relationship with BOA.

69.     As a direct and proximate result of BOA's wrongful actions, Profiles and Class members have suffered damages up to $10 million each due their inability to apply for a PPP loan with BOA despite being eligible therefor.

## COUNT III
### Declaratory Judgment and Preliminary and Permanent Injunction
### Pursuant to 28 U.S.C. §§ 2201  and 2202
### (Against All Defendants)

70.     Named Plaintiff incorporates each and every allegation contained in the preceding paragraphs by reference as if fully set forth herein.

71.     There is an actual controversy between Defendants and the Class concerning the application of the PPP.

72.     Pursuant to 28 U.S.C. § 2201 this Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

73.     BOA wrongfully prevented entities and individuals from applying for PPP loans from BOA, despite meeting all federally-imposed PPP loan eligibility requirements, for lack of a lending relationship with BOA.

74.     Accordingly, Profiles and members of the Class seek a declaration that BOA's requirement that applicants have a lending relationship with BOA in order to apply for a PPP loan

14

be declared void, invalid and unenforceable.

75.     Named Plaintiff and the Class are likely to succeed on the merits of their causes of action set forth in Counts I-III.

76.     Named Plaintiff and the Class have suffered and will continue to suffer irreparable harm in the absence of injunctive relief enjoining BOA from depriving Named Plaintiff and the Class from the rights and benefits bestowed by the CARES Act and its regulations, and do not have an adequate remedy at law.

77.     BOA will suffer no injury if the preliminary injunctive relief sought by the Named Plaintiff and the Class is granted.

78.     The public interest will be served by the granting preliminary injunctive relief sought by the Named Plaintiff and the Class.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Named Plaintiff and the Class pray as follows:

A.     Certify this action as a class action, pursuant to Fed. R. Civ. P. 23, designate Named Plaintiff as the Class representatives, and counsel for Named Plaintiff as Class Counsel;

B.     Preliminarily and permanently enjoin BOA from engaging in the wrongful and unlawful conduct alleged herein, viz., depriving Named Plaintiff and the Class from the rights and benefits bestowed by the CARES Act and its regulations;

C.     Direct BOA to make available to Named Plaintiff and the Class all of the rights and benefits under the CARES Act and its regulations;

D.     Award damages, including compensatory, exemplary, and statutory damages, to Named Plaintiff and the Class in an amount to be determined at trial, for the acts complained of herein;

E.      Award Named Plaintiff and the Class their expenses and costs of suit, including reasonable attorneys' fees to the extent provided by law;

F.      Award Named Plaintiff and the Class pre-judgment and post-judgment interest at the highest legal rate to the extent provided by law; and

G.      Grant all other and further relief to which Named Plaintiff and the Class are entitled by law or in equity as may be determined by the Court to be just, equitable and proper.

Respectfully submitted,

 /S/ M. Celeste Bruce
M. Celeste Bruce, Maryland Federal Bar No. 10710
Charles S. Fax, Maryland Federal Bar No. 2490
Rifkin Weiner Livingston LLC
7979 Old Georgetown Road, Suite 400
Bethesda, Maryland 20814
Telephone: (301) 951-0150
Telecopier: (301) 951-0172
Cell Phone: (410) 274-1453
Email: cbruce@rwllaw.com; cfax@rwllaw.com

Alan M. Rifkin, Maryland Federal Bar No. 11562
Liesel J. Schopler, Maryland Federal Bar No. 17280
Rifkin Weiner Livingston LLC
225 Duke of Gloucester Street
Annapolis, Maryland 21401
Telephone: (410) 269-5066
Telecopier: (410) 269-1235
Email: arifkin@rwllaw.com; lschopler@rwlls.com

Barry L. Gogel, Maryland Federal Bar No. 25495
2002 Clipper Park Road, Suite 108
Baltimore, Maryland 21211
Telephone: (410) 769-8080
Telecopier: (410) 769-8811
Email: bgogel@rwllaw.com

April 3, 2020