**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| **PROFILES, INC.**, *et al.*, | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Case No.: SAG-20-0894 |
| | * | |
| **BANK OF AMERICA CORP.**, *et al.*, | * | |
| | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

THIS MATTER concerns a Motion to Stay filed by Profiles, Inc., on behalf of itself and a putative class of small businesses (collectively, "Plaintiffs"). ECF 21. Bank of America ("BofA") filed an opposition, ECF 25, and Plaintiffs filed a reply, ECF 26. No hearing is necessary. *See* Loc. R. 105. 6 (D. Md. 2018). For the reasons explained below, the Motion will be DENIED.

**I.    FACTUAL BACKGROUND**

A brief recitation of some of the more comprehensive facts set forth in this Court's Memorandum Opinion denying Plaintiffs' request for a Temporary Restraining Order and Preliminary Injunction, ECF 17, 2020 WL 1849710, at *1–2 (D. Md. Apr. 13, 2020), will be useful. In response to the novel coronavirus ("COVID-19") pandemic and its devastating effects on many American small businesses, the federal government enacted emergency legislation. Congress passed, and on March 27, 2020, President Trump signed, the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). H.R. 748 P.L. 116-136; ECF 7-8. The CARES Act's objective is "to provide emergency assistance and health care response for individuals, families,

and businesses affected by the coronavirus pandemic." Interim Final Rule, 13 C.F.R. Part 120, ECF 7-2.

The CARES Act gave the Small Business Administration authority "to modify existing loan programs and establish a new loan program to assist small businesses nationwide adversely impacted by the COVID-19 emergency." *Id.* at 3. In particular, section 1102 of the CARES Act amended the Small Business Act, 15 U.S.C. § 636 ("SBA"), and established the $349 billion Paycheck Protection Program ("PPP"), under which participating lenders are authorized to make certain loans to eligible small businesses. *See* § 1102(a)(2).

BofA began accepting online applications for PPP loans on April 3, 2020. ECF 15 at 6. At that time, BofA only permitted applications from businesses with a preexisting *borrowing* relationship with BofA. However, on April 4, 2020, BofA revised its policy to allow certain *depository*-only clients to apply for PPP loans as well. *See* ECF 7-6. The new policy stated:

> To be eligible, you must have a Small Business lending and Small Business checking relationship with Bank of America as of February 15, 2020 or a Small Business checking account opened no later than February 15, 2020 and do not have a business credit or borrowing relationship with another bank.

*Id.* at 2.

Plaintiffs contend that the class members have had difficulty applying for PPP loans with BofA. Plaintiffs filed their original Complaint on April 3, 2020, ECF 1, and filed an Amended Complaint the following day, ECF 3. Following BofA's policy change on April 4, 2020, Plaintiffs filed their Second Amended Complaint on April 7, 2020. ECF 5. This Court held a telephonic hearing on Plaintiffs' Motion for a Temporary Restraining Order ("TRO") and Preliminary Injunction, ECF 7, on April 10, 2020. In its Memorandum Opinion dated April 13, 2020, ECF 17, the Court concluded that the CARES Act provides neither an express nor an implied private right of action. *Id.* at 7–13. Furthermore, the Court found that BofA's eligibility criteria do not

contravene the plain language of the CARES Act. *Id.* at 13–15. Both of these grounds, the Court concluded, were independently sufficient to deny both Plaintiffs' requests for a TRO and a preliminary injunction. *Id.* at 7-15. Finally, the Court concluded that even assuming *arguendo* that the CARES Act provides a private right of action, and that BofA's conduct ran afoul of the statute, Plaintiffs had failed to establish the remaining factors necessary for the entry of a TRO. *Id.* at 16–23. Accordingly, the Court issued an Order denying Plaintiffs' Motion. ECF 18. Plaintiffs filed an interlocutory appeal with the United States Court of Appeals for the Fourth Circuit, and now seek an emergency stay pending that appeal, ECF 21.

## II.    LEGAL STANDARD

The issuance of a stay is "an exercise of judicial discretion" and its propriety "depend[s] upon the circumstances of the particular case." *Nken v. Holder*, 556 U.S. 418, 433 (2009). Courts consider four factors when determining whether to grant a stay pending appeal: (1) the movant's likelihood of success on the merits; (2) whether denial would cause irreparable injury to the movant; (3) whether issuance of the stay will substantially injure the non-movant; and (4) where the public interest lies. *Id.* at 434. Critically, a stay pending appeal does not "direct[] an actor's conduct," but rather "suspend[s] judicial alteration of the status quo." *Id.* at 428–29 (citation omitted).

## III.   ANALYSIS

As an initial matter, Plaintiffs' Motion does not seek a "stay," as the term is typically understood and applied by courts. Specifically, Plaintiffs characterize their stay as "an injunction enjoining [BofA] from imposing any requirements other than those stated in the [CARES Act]." ECF 21 at 1. This request simply rephrases the relief sought in Plaintiffs' Motion for a TRO and Preliminary Injunction. *See* ECF 7-9 (proposing TRO that would enjoin BofA "from imposing

eligibility requirements other than those requirements set forth in section 1102 of the [CARES Act]"). Indeed, granting Plaintiffs' requested "stay" would impose the precise "mandatory" injunction that this Court rejected in its Opinion earlier this week.

The purpose of a stay pending appeal is perhaps best illustrated with an example. In *Realvirt, LLC v. Lee*, United States District Judge T.S. Ellis, III had issued a Memorandum Opinion and Order directing the plaintiff to pay more than $100,000 to the defendant Patent and Trademark Office. 220 F. Supp. 3d 704, 705 (E.D. Va. 2016). However, the plaintiff appealed that Order to the Court of Appeals and, simultaneously, moved to stay Judge Ellis's Order. *Id.* Judge Ellis analyzed the four *Nken* factors, and found that the plaintiff would "suffer irreparable financial injury should it be required to pay the full amount of the Order." *Id.* at 706. Accordingly, Judge Ellis stayed the plaintiff's obligation to pay the amount in his Order, pending resolution of the appeal. *Id.* In contrast, Plaintiffs here do not seek merely to preserve the status quo as they litigate their appeal at the Fourth Circuit. Whereas the stay in *Realvirt* temporarily delayed the imposition of an obligation on the plaintiff, here, Plaintiffs seek to have this Court *impose* an affirmative obligation on BofA. Plaintiffs' Motion is denied on this basis alone, because a stay is not the appropriate vehicle in which to direct an actor's conduct. *See, e.g.*, *Sanofi-Aventis U.S. LLC v. Sandoz, Inc.*, Nos. 2009-1427, 2009-1444, 2009 WL 7365766, at *2 (Fed. Cir. Aug. 13, 2009) (Moore, J., concurring) (explaining that a stay did not allow court to "direct" the FDA's conduct).

The case cited by Plaintiffs for the proposition that a stay can be appropriate even when injunctive relief has been denied, *American Beverage Association v. City & County of San Francisco*, further illustrates the inappropriate nature of a "stay" in this case. *See* 187 F. Supp. 3d 1123 (N.D. Cal. 2016). The injunction that had been denied in *American Beverage Ass'n* sought to enjoin enforcement of an ordinance requiring any entity marketing sugar-sweetened beverages

to include a warning about adverse health effects associated with their consumption. *Id.* at 1130–31. As a result of that denial, the marketers would have to begin including the required warnings during the pendency of the appeal. *See* 2016 WL 9184999, at *1-2 (N.D. Cal. June 7, 2016). The district court agreed to stay the denial of the injunction pending appeal, which resulted in the maintenance of the status quo, *i.e.*, the marketers did not have to change their behavior to include the warnings until the appeal was resolved. *Id.* at *2.

The instant case presents the reverse situation. Since April 4, 2020, BofA has been participating in the PPP program under the guidelines in its amended policy. Because this Court denied the requested injunctive relief, the status quo is maintained, and BofA can continue implementing its existing policy (to the extent any additional PPP loans can be issued). Under the guise of a "stay," Plaintiffs seek to alter the status quo, and to change BofA's behavior and direct its conduct, by limiting the criteria it can impose in accepting loan applications for review. That request for mandatory injunctive relief renders the requested "stay" improper. Nevertheless, the Court will briefly address each *Nken* factor in turn.

**A. Likelihood of Success on the Merits**

"The likelihood-of-success standard does not mean that the trial court needs to change its mind or develop serious doubts concerning the correctness of its decision in order to grant a stay pending appeal." *Goldstein v. Miller*, 488 F. Supp. 156, 172 (D. Md. 1980). On appeal, the Fourth Circuit will assess whether this Court, with its Memorandum Opinion and Order, abused its discretion. *Roe v. Dep't of Def.*, 947 F.3d 207, 219 (4th Cir. 2020) ("Abuse of discretion is a deferential standard, and we may not reverse so long as the district court's account of the evidence is plausible in light of the record viewed in its entirety.") (citation omitted). Plaintiffs correctly point out that this case involves several issues of first impression in the Fourth Circuit. ECF 21 at

5. Namely, because the CARES Act is just a weeks-old law, no other court has addressed whether it contains an implied private right of action. Even so, several courts have found that provisions of the SBA, which was amended by Title I of the CARES Act, do not contain a private right of action. *See, e.g.*, *Bulluck v. Newtek Small Bus. Fin., Inc.*, No. 19-10238, 2020 WL 1490702 (11th Cir. Mar. 27, 2020) (per curiam); *Crandal v. Ball, Ball and Brosamer, Inc.*, 99 F.3d 907 (9th Cir. 1996).

Plaintiffs' likelihood of success on appeal is further diminished because of the reproach expressed by the Supreme Court, and subsequent courts, of judicially-created private rights of action. *See Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001) ("The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. . . . Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter . . . ."); *Planned Parenthood S. Atl. v. Baker*, 941  F.3d 687, 695 (4th Cir. 2019) ("[A]n expansive approach to implied rights of action cannot be squared with the doctrine of  the separation of powers."); *Miller v. Chase Home Fin., LLC*, 677 F.3d 1113, 1116 (11th Cir. 2012) (finding no implied private right of action in the "Home Affordable Modification Program," emergency legislation that was passed during the economic crisis of 2008). Moreover, aside from this initial and substantial obstacle, in order to succeed on appeal, Plaintiffs need to show that this Court abused its discretion in determining that BofA's conduct has not contravened the CARES Act. As the Court explained at length, the plain language of § 1102(a)(2) does not preclude lenders from considering factors beyond the two identified in the statute. Other than reiterating the arguments that the Court already deemed unpersuasive, Plaintiffs have not offered any showing that they are likely to succeed on appeal.

B. **Irreparable Injury**

In its Memorandum Opinion, the Court concluded that Plaintiffs had not shown that BofA prevented small businesses from applying for a PPP loan. ECF 17 at 19–20. In fact, as of the date of that Opinion, at least one Plaintiff had an outstanding application with BofA. *Id.* at 18. The current dynamics of PPP and, specifically, how much has changed in just the few days since this Court issued its Opinion, illustrate how fluid this situation remains. For instance, while this Court noted that at least 2,400 lenders had accepted loan applications according to news reports, subsequent reporting shows that an even higher number of lenders have been participating.[1] Those newly authorized lenders include not only traditional banks, but also financial technology companies like PayPal, Intuit, and Square Capital.[2] Additionally, Baltimore City announced a partnership with Goldman Sachs and Lendistry, a California-based small business lender, to make $10 million in PPP loans available to Baltimore city businesses (like at least one named Plaintiff), targeting "underserved Baltimore businesses that don't have a relationship with a traditional bank."[3]

Finally, absent further congressional action, it appears that the SBA has now exhausted the available funds for the PPP program.[4] Based on these new circumstances, combined with the infirmities this Court previously identified in Plaintiffs' arguments, Plaintiffs cannot show that the

---

[1] Erin Arvedlund, "Pa. Small businesses have gotten almost $10 billion in coronavirus PPP loans as the program expands…" *The Philadelphia Inquirer* (Apr. 15, 2020), https://www.inquirer.com/business/pa-sba-ppp-coronavirus-loans-20200415.html (explaining that over 4,000 lenders are participating).

[2] Michael Tattersall, "PayPal, Intuit, and Square Capital can now facilitate government loans," *Business Insider* (Apr. 15, 2020), https://www.businessinsider.com/paypal-intuit-square-approved-to-distribute-sba-loans-2020-4.

[3] Jessica Iannetta, "Baltimore, Goldman Sachs announce $10M in PPP loans for small businesses," *Baltimore Business Journal* (April 14, 2020), https://www.bizjournals.com/baltimore/news/2020/04/14/baltimore-goldman-sachs-announce-10m-in-ppp-loans.html.

[4] Erica Werner, Aaron Gregg and Renae Merle, "White House says new small business loan program is out of money," *Washington Post* (Apr. 16, 2020), https://www.washingtonpost.com/us-policy/2020/04/16/congress-coronavirus-small-business-trump/.

lack of an emergency stay would cause irreparable injury that is attributable specifically to BofA's PPP loan policies. Plaintiffs had opportunities, through entities other than BofA, to apply for PPP loans, and imposing an emergency stay at a point in which the PPP funding has been exhausted may have no practical effect whatsoever.

### C. Substantial Injury to Non-Movant and Public Interest

Finally, in its Memorandum Opinion, the Court explained that granting Plaintiffs' requested injunction would "have consequences reaching far beyond the litigants in this particular case." ECF 17 at 21. All parties agree that PPP is completely voluntary on the part of BofA and other lenders. Thus, enjoining BofA from implementing its current system for accepting and processing loan applications has the potential not only to disrupt BofA's ability to provide loans to small businesses, but also to disincentivize other lenders from participating in PPP altogether. Plaintiffs do not dispute that other lenders have considered factors beyond the two identified in the CARES Act, including prioritization of their existing customers. While this fact is not dispositive in terms of whether these additional criteria are consistent with the CARES Act, it nevertheless crystallizes how disruptive a mandatory injunction could be in this context, to the extent Congress provides additional funding to guarantee loans issued by authorized institutions. The proper balance between the competing and compelling public interests implicated in this incredibly complex situation must be struck by the legislative branch.

## IV.    CONCLUSION[5]

For the reasons set forth above, Plaintiffs' Motion for a Stay, ECF 21, is DENIED. A separate Order follows.

Dated: April 17, 2020                                          /s/
                                                                          Stephanie A. Gallagher
                                                                          United States District Judge

---

[5] Because the Court will not enter a stay pending appeal, Plaintiffs are not required to provide a bond. *See IA Labs Ca, LLC v. Nintendo Co., Ltd.*, 946 F. Supp. 2d 429, 430–31 (D. Md. 2013) (explaining the purposes of a supersedeas bond under Fed. R. Civ. P. 62(d)); *see also* Fed. R. Civ. P. 65(c) ("The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security . . . .").